McBRIDE, Judge.
Plaintiff, Monroe Thomas, brings this action to have himself declared and recognized as the owner of an undivided three-fourths interest in two certain lots of ground with improvements in the City of New Orleans, and to have defendant, Lillie Scott Thomas, his divorced wife, who is in possession, deliver the property to him.
Plaintiff seeks to have annulled a certain instrument dated March 31, 1942, which he styles a “declaration” purportedly signed by him and by his then wife, Lillie S. Thomas, before Frederic C. Querens, Notary Public, and to have its inscription erased from the conveyance records.
He also seeks judgment declaring null and void a “declaration of family home” made by Lillie S. Thomas under date of June 8, 1945, and ordering a cancellation of the inscription thereof from the conveyance books.
The document of March 31, 1942 reads as follows:
“State of Louisiana
“Parish of Orleans
“Before Me, the undersigned Notary Public, duly commissioned and qualified in and for the Parish of this State, personally came and appeared:
“Monroe Thomas
“of age and a resident of New Orleans, who declared and acknowledged that he is part owner of the property that was purchased during the first community between himself and his first wife, Lucille Pullet, from the Liberty Homestead on May 17, 1935, by act before John Wagner, N.P., being two lots of ground designated by the letters ‘K’ and ‘L’, of Square 1227, Third District of New Orleans and measuring each Z8'5'' front on Louisa Street by a depth of llS'ó”, square bounded by N. Tonti, N. Rocheblave and Piety Streets, with the Improvements No. 2345 Louisa St., and as registered in Cob 478, fo. 559, and Mob 1501, fo. 72, and on which a loan of $550.00, was made with said Liberty Homestead with interest of 6% per annum from date until paid.
“That said Lucille Pullet Thomas, died on the 12th, of October, 1935, in New Orleans; that on April 26, 1936, he married Lillie Scott, and with whom he has since been residing.
“Appearer now declares he recognizes that his said wife Lillie Scott Thomas has advanced certain money towards the payment of the balance of indebtedness due the Liberty Homestead on said property in various monthly payments under the loan, Certificate No. 3490, that the approximate sum of $200,00, belongs to her separate estate, she having had same prior to and at the time of her marriage and that he executes the present declaration in order to convey, transfer and assign to his said wife his undivided interest or ownership in said property in satisfaction and payment and in exchange for the amount of money which she has heretofore paid towards his said debt and admits that from and after this date his said wife, Lillie Scott Thomas, shall be, a part owner of said property and that this document shall *471 serve with full effect as a counter letter or otherwise as the Law directs.
“Monroe Thomas
“Lillie S. Thomas
“Witnesses:
“Charlotte H. Brown
“John Wagner
“In witness whereof I attach my hand and seal of office this 31st, day of March, 1942.
“Frederic C. Querens
“Notary Public.”
Thomas married Lillie Scott on April 28, 1936 and secured a divorce from h'er by judgment of the Superior Court of the State of California in and for the County of Solano on October 8, 1948. He alleges that_ he left New Orleans in the latter part of December 1941 and went to the city of Vallejo, California, and never returned to New Orleans until June 1943 and then only for a short visit. He further claims that he never became aware of the existence of the above-quoted instrument until a few weeks prior to the filing of this suit. Thomas denies that he appeared before Notary Querens on March 31, 1942, or at any other time, and avers that he was a resident of Vallejo on the date the instrument bears and also on April 29, 1942, the datq on which it was registered in the Conveyance Office.
He makes the specific and unequivocal allegation that his purported signature on the document is a forgery.
After filing a preliminary exception, the ■defendant answered the petition denying that the signature is a forgery. She avers that the document is valid in every respect, ■constitutes a dation en paiement, and transferred to her whatever interest plaintiff had •in the property at the time of the execution thereof. The answer alleges that Thomas .appeared before the notary public on March 31, 1942 and signed the document, and ■specific denial is made to the allegation that Thomas was in California on the date the •instrument was signed. She admits that the “declaration of family home” is null, void, and of no effect.
The defendant in a reconventional demand claims that in January 1951 at the instance of plaintiff she was arrested and brought to the office of the district attorney where she was interrogated regarding Thomas’ signature on the document; that her arrest and detention by the police has caused a deterioration of her physical condition. She claims damages to the extent of $5,000 as a result of the malicious prosecution instigated by plaintiff. Defendant further prays, in ■ the event of plaintiff’s success in his demand for an annulment of the document, that she have judgment in reconvention against him for the sum of $350 representing one-half of the payments made on the property out of community funds; $150 as one-half of the value of the improvements made on the property during the community which existed between her and the plaintiff; also the sum of $1,960.25, the cost of repairs made by her to the property with her own funds.
About two weeks before the matter was reached for trial, a supplemental and amended petition was filed by plaintiff, with leave of court, .in which he alleges that should it be held that his signature on the document of March 31, 1942 is genuine, then the document is null and void for four additional reasons, all plead in the alternative, viz.: (1) that a husband cannot contract with his wife during coverture; (2) that if it should be decreed that the document is a dation en paiement, then the said document does not comply with the legal requirements inasmuch as it is not in the form of an authentic act; (3) that the consideration stated is inadequate and insufficient; and (4) that the transaction is subject to rescission on the ground of lesion beyond moiety.
After filing a plea of four years’ prescription to the demands contained in the supplemental petition, defendant answered denying plaintiff’s averments.
Defendant also filed written objection to the supplemental petition on the ground that by it plaintiff had attempted to alter the substance of his original demand after joinder of issue.
After a trial of the case on the merits, judgment was rendered annulling the instrument of March 31-, 1942 and ordering *472 its registration cancelled for the reason “that it does not meet the requirements of a dation en payment, for the reason that the consideration expressed in the instrument is * * * not a fixed price.” Plaintiff was recognized as owner of the three-fourths interest in the property, and defendant was ordered to deliver up possession ; the “declaration of family home” was declared null, void and of no effect, and its registration was ordered erased from the conveyance records. The claim in recon-vention was dismissed.
Defendant has appealed from the judgment.
The trial judge’s opinion was that the overwhelming weight of the evidence preponderated against plaintiff’s contention that his purported signature was 'a forgery. Thomas’ testimony stands alone and is the only evidence in the record supporting his position that the signature is not his. Mr. Querens, the officiating notary who executed the acknowledgment of the signatures, was called as a witness, and his testimony, so far as his memory serves him, is that Monroe Thomas was the man who appeared in his office in company with Lillie Scott Thomas and signed the document. In addition to this positive testimony, Charles A. Kincade, a member of the New Orleans Police Department, who has had experience in handwriting, testified as an expert to the effect that Thomas’ genuine signature appears on the document. But aside from this, a comparison of the admitted writings and signatures of the plaintiff with the disputed signature evinces a marked similarity, and we entertain no doubt whatever that Monroe Thomas, notwithstanding his persistent denials, did actually appear and sign the document in the notary’s .office in the presence of Mr. Querens, Lillie Scott Thomas, and the two witnesses, one of whom is Charlotte Brown, who gave her testimony at the trial. Thomas’ assertion that he was not in the City of New Orleans on the day the document was signed is effectively impeached by the records of the Flintkote Company, which show that he was working for that concern in New Orleans that very day.- Another suspicious circumstance, and one which tends to discredit Thomas’ attempt to repudiate the signature, is that he even went so far as to disclaim his signature on the act by which he had originally acquired title to the property which he, by this suit, is endeavoring to recover. ■
In addition to lodging written objection to the supplemental petition upon the ground that it changed the issues, defendant also objected, at the inception of the trial, to any evidence being received in support of the allegations of the supplemental petition. Vehement objection was also made to any evidence which might go beyond the scope of the inquiry as to forgery vel non. The latter objection is grounded on the premise that whereas plaintiff had disclaimed his signature by charging that it was a forgery, he is, under the provisions of the Code of Practice, cut off from making any other defense against the validity of the document. All these objections were overruled, but they are strenuously reurged before us and must now be discussed.
The nature of the objections raises these questions: (1) Can the plaintiff, although pleading them in the alternative, level other attacks against the document after he had once set forth that his signature was a counterfeit, and (2) do the rigors of Article 326 apply to a plaintiff whose signature has been proven after his having denied it?
LSA-C.C. art. 2244 provides that “The person against whom an act under private signature is produced, is obliged formally to avow or disavow his signature.” C.P. art. 324 is to the same import. C.P. art. 325 sets forth the rule of evidence to be invoked in cases involving instruments under private signature when the genuineness of the signature of the grantor or ob-ligor thereon is disputed. The article provides that if the defendant deny his signature, or contend that' the same has been counterfeited, the plaintiff must prove the genuineness of such signature.
C.P. art. 326 then sets forth:
“The defendant, whose signature shall have been proved after his having denied the same, shall be barred from *473 every other defense, and judgment shall be given against him without further proceedings.”
Counsel argue pro and con as to whether the penalty contemplated by Article 326 applies to a plaintiff, the verity of whose signature shall have been proved after his denial of its genuineness.
Under the emphatic language of C.P. art. 326 we do not believe that the supplemental and amended petition should have been allowed and it should have been stricken upon defendant’s objection, as the demands therein, notwithstanding alternative pleading, are repugnant to such an extent as to be reprobated by positive law. While the recent jurisprudence trends toward liberality in the matter of alternative pleadings and permits inconsistent demands or defenses to be made when so pleaded, we have been unable to find any authority holding that once a pleader has expressly impugned his signature he may raise other defenses or assert other demands.
Moreover, defendant’s objections to the reception of evidence on the supplemental petition should have been maintained. Under jurisprudence established by the Supreme Court the penalty levied by C.P. art. 326 applies equally as well to a plaintiff when he unsuccessfully contests the genuineness of his signature. He is thereupon foreclosed from asserting any other defense.
This very question confronted the Supreme Court in the case of Smith v. Union Sawmill Co., 120 La. 599, 45 So. 519, wherein a plaintiff denied having signed a certain act of sale of timber and prayed that its registry be cancelled. It developed that the instrument under attack was “peculiar” in certain respects. The Court made this observation :
“This peculiarity, however, would be material only if plaintiff were contending that the instrument had been tampered with; but his contention is that he never signed it at all, and by express provision of the Code of Practice, where the person against whom an instrument is offered denies his signature, he is barred from every other de- ' fense, and, the signature being proved, judgment must be rendered against him. Articles 324, 325, 326.”
The same proposition engaged the attention of the Court of Appeal for the Second Circuit in Reeves v. Southern Kraft Corporation, La.App,, 1 So.2d 824, 827. There the plaintiff sought recognition as the owner of an interest in certain land. The defendants alleged that a deed signed by the plaintiff constituted a muniment of their title, and that plaintiff was without interest to assert any claim to the property. When confronted with the deed, plaintiff made denial of his signature, and the court, after considering the evidence, reached the conclusion that the signature was genuine. Citing C.P. art. 326 the court then said:
“The penalty for unsuccessfully contending that his signature to an instrument is a forgery is that the litigant is cut off from all other defenses. $ jj< * ff
In Cox v. Cox, 193 La. 268, 190 So. 401, 402, a plaintiff set out in his petition that the defendant took with her when she left the matrimonial domicile certain securities which either did not bear his signature, or if the same does bear such signature, it was procured by false and fraudulent misrepresentations. The defendant filed a motion to strike certain allegations of the petition. The basis of the motion to strike was that plaintiff having alleged forgery could not be heard to urge other or additional defenses. In support of this contention the defendant cited Articles 324, 325 and 326 of the Code of Practice and Article 2244 LSA-C.C., as well as a number of decisions in support of the motion. The Court found it unnecessary to discuss these decisions:
“ * * * because it is well settled and the Code of Practice and the Civil Code provide and contemplate an expressed or special denial of the signature before the inquiry would be limited to the genuineness of the signature. * * *"
In other words, the Supreme Court in the Cox case intimates that if the plaintiff had made a special and outright denial of his signature, the inquiry would have then been *474 limited to the genuineness of the signature. A similar situation is not to be found in the instant case. The plaintiff alleged that the purported signature “Monroe Thomas” was not his own but was a forgery.
By the force of the objections the case should have been with defendant insofar as the demands of plaintiff were concerned.
 Assuming for the moment, however, that all that may have been said with respect to the supplemental petition and as to plaintiff’s right to adduce evidence in support of the demands therein is erroneous, we perceive no merit in any of the attacks aimed at the document in the supplemental petition;
The act contains all the necessary elements of a dation en paiement of the two lots by Monroe Thomas to his wife, in satisfaction of paraphernal funds advanced by her to meet installments becoming due on the homestead mortgage with which Thomas had encumbered the property upon its acquisition by him before marriage with Lillie Scott. The fact that the instrument recites'“that this document shall serve with full effect as a counter letter or otherwise as the Law directs,” is of no moment. Whatever be the name given to an act, its character is to be ascertained by inquiry into the nature of the transaction and the intent of the parties to it, which in this case is clearly evident.
Plaintiff alleges that -“husband and wife cannot contract during coverture.” This contention is set at rest by LSA-C.C. art. 2446 which in part reads:
“A contract of sale, between husband and wife, can take place only in the three following cases:
* * * * * *
“2. When the transfer made by the husband to his wife, even though not separated, has a legitimate cause, as the replacing of her dotal or other effects alienated.”
The next contention is that the document does not comply with the legal requirements of a dation en paiement inasmuch as it is not in the authentic form. LSA-C.C. art. 2234 establishes that the authentic act, as relates to contracts, is that which has been executed before a notary public or other officer authorized to execute such functions, in the presence of two witnesses aged at least 14 years. That it was so executed must appear from the act. Nothing appears on the face'of the act showing that it was executed in the required manner, and we agree that it is not to be classified as an authentic act. See Colonial Trust Co. v. St. John Lumber Co., 138 La. 1033, 71 So. 147; West Louisiana Bank v. Dawson, 154 La. 830, 98 So. 262; Demasi v. Whitney Trust & Savings Bank, La.App., 176 So. 703.
However, it differs not whether it is one in the authentic form or sous seing prive. LSA-C.C. art. 2240 recites that all acts may be executed under private signature, except such as positive laws have ordained to be passed in the presence of a notary. After a diligent search we have been unable to find any statutory provisions or decisions of our appellate courts holding that a dation en paiement between a husband and wife must be executed in the form of an authentic act, except this isolated expression of the Supreme Court made in Hyman v. Schlenker, 44 La.Ann. 108, 10 So. 623, 625:
“A dation en paiement by a husband to his wife cannot be made otherwise than by authentic act. * * * ”
It appears there was no basis for that statement.
Therefore, the act under private signature before us which was duly acknowledged has the same legal effect as though it had been passed in the authentic form and the parties bound to- the same extent. LSA-C.C. art. 2242.
The contentions that the price is inadequate and the transaction tainted with lesion beyond moiety can avail plaintiff nothing. We doubt that rescission for lesion beyond moiety applies to a giving in payment in Louisiana. According to LSA-C.C. art. 1861 lesion beyond moiety is available in only two cases,' namely, sale and partition. LSA-C.C. art. 1863 emphasizes that rescission for lesion may be had in no other contracts. However, seeming *475 ly contradictory are other provisions of the Code to the effect that lesion beyond moiety might apply in some instances to the contract of exchange. LSA-C.C. arts. 2664, 2655 and 2666. Whether a dation en paiement is to be placed in the category of an act of sale need not be decided, because even if it were to be held that lesion applies to a dation en paiement, as well as to a sale, whatever right plaintiff may have had to sue for a rescission on that ground is barred by the prescription of four years, a plea to that effect having been interposed by defendant. LSA-C.C. arts. 1876, 2595, 2596.
The predicate for the judgment in plaintiff’s favor was the conclusion formulated by the trial judge that the price of the transaction was not “fixed.” We quote from the reasons for judgment:
“ * * * The instrument on its face shows that it does not meet the requirements of a dation en payment,-for the reason that the consideration expressed in the instrument is ‘Approximately $200.00.’ This is not a sum certain, not a fixed price, and a fixed price is an essential for the sale of real property or for the dation en payment. (Slaton v. King, 214 La. 89, 36 So.2d 648.)”
We do not agree to the correctness of the finding. In the first place that ground of annulment is dehors the pleadings, and secondly the act sufficiently sets forth a price.
Under LSA-C.C. art. 2464 the price of the sale must be certain, that is to say, fixed and determined by the parties, and the giving in payment, by the terms of LSA-C.C. art. 2659, is subjected to all of the rules which govern the ordinary contract of sale.
In Slaton v. King, supra, cited in the reasons for judgment, the Supreme Court said [214 La. 89, 36 So. 650]:
“ * * * all of the elements necessary to an ordinary contract of sale, i. e., and agreement for the object and the price thereof, are essential to a dation en paiement. * * * ”
In the earlier case of Freiburg v. Langfelder, 46 La.Ann. 1417, 15 So. 677 we find this observation:
“In a dation en payment the thing transferred to the wife must bear a just proportion in value to the amount due the wife. A sale is an entirety, and there is no contract where there is no agreement as to the price. * * * ”
It is true, as was said by the judge, that the consideration expressed in the instrument is “approximately $200.00,” but we do not think it can be said that the price was not fixed with certainty. Thomas’ obvious intention was to recompense his wife for paraphernal expenditures made in liquidating his separate mortgage indebtedness, which the parties believed aggregated about $200. The record indicates that Thomas and Lillie Scott are uneducated colored people, the extent of the latter’s education being the third grade. It is a well-known fact that transactions between a husband and wife with reference to sums and amounts which may be looked upon as insubstantial are ordinarily not accompanied by all the niceties and details of formal bookkeeping and accounting practices. This is particularly true when such persons as are before us are concerned. See Federal Land Bank of New Orleans v. Stanfield, La.App., 14 So.2d 654, 656. In that case a judgment creditor sought to set aside a husband’s act of dation en paiement to his wife and to subject the property to execution on an indebtedness of the husband. The evidence developed that there was no showing as to the exact amount of paraphernal property for which the husband was indebted to the wife, but nevertheless the court upheld the validity of the dation en paiement saying:
“ * * * Unquestionably, this was not the exact amount, but, certainly, there is no appreciable margin of difference either above or below this figure. It is noted that plaintiff has made no attack upon the value of the property conveyed in the act of dation en paiement as being excessively disproportionate to the recited indebtedness of $600, and it therefore follows that if *476 the amount of $600, or substantially such amount, was actually brought into the marriage 'or contributed from the separate and paraphernal funds of the wife, the consideration for the act of dation must be regarded as valid and subsisting.”
In Pulford v. Dimmick, 107 La. 403, 31 So. 879, it is said that the validity of a sale or dation does not depend on a price being fixed with certainty in the act, but depends on a price having been agreed upon by the parties.
In Succession of Diez, 194 La. 1089, 195 So. 613, 614, the Supreme Court was concerned with a dation en paiement made by a father to the children of his first marriage, which was attacked by children of the second marriage. The dation contained no stipulation as to the amount of the consideration, except that it was made “in order to settle the hereditary rights of his said children and discharge them and to repay to his two children, Elie and Chris-tophe, who for years have aided, worked for and assisted him, * * The evidence showed that the community existing between Diez and his first wife owned property at the time of her death worth "approximately” $2,000, and that the land transferred to the children of the first marriage in settlement of the rights inherited from their mother was valued at from $10 to $15 an acre, or the sum of $930 "at the most”. The Court held the transaction to be a valid dation en paiement.
During the course of the trial plaintiff sought to prove that there was no consideration whatever as the defendant had made no paraphernal advances in connection with Thomas’ mortgage. Both in oral argument and in brief counsel maintain that the instrument should be set aside for that reason.
Under defendant’s objection all testimony along that line should have been excluded. LSA-C.C. art. 2236 prescribes that the authentic act makes full proof of the agreement contained in it as against the contracting parties and their heirs or assigns. And LSA-C.C. art; 2276 recites that parol evidence shall' not be admitted against or beyond what is contained in the acts. Nothing in our jurisprudence is more firmly settled than the principle that the recitals of an act cannot be varied or contradicted by parol testimony, and when a transfer of real property is evidenced by an act which definitely and clearly recites that a certain specified consideration was. given for the sale, the only modes by which the grantor can show that there was no consideration are (1) by means of a counterletter, or (2) by answers of the other party to interrogatories on facts and articles. As far back as 1890, in the case of Godwin v. Neustadtl, 42 La.Ann. 735, 7 So. 744, 745, the Supreme Court remarked that this is “horn-book law”. The same rule has been applied indiscriminately both to sales made by authentic acts and those under private signature.
We attach little importance to the matter of the recordation of the declaration of family home. Although defendant could state no plausible reason why such declaration was recorded outside of the vague statement that some lawyer whom she could not name advised her to file it, the fact that the declaration was spread on the conveyance records does not in any way lessen the efficacy of the dation en paiement, or in any wise adversely affect Lillie Scott’s title to the property. At least it cannot be said that the recordation of the declaration has the effect of re-transferring the property to the plaintiff.
Dations en paiement, inasmuch as they are for the protection of married women, are favorably regarded by the courts and are to be maintained when honestly made. We have no reason to doubt that the transaction under scrutiny was bona fide. After the agreement was confected between the parties, Lillie Scott went into possession of the property as owner and has remained there to the present day.
This suit was not filed until November 1950, and it strikes us that if Thomas actually believed that he had not made a -valid transfer of the property, he would have *477 brought his action sooner. He well knew all the time that Lillie Scott occupied the premises, and we are inclined to the belief that his attack on the dation en paiement was purely an afterthought. Thomas executed the agreement in 1942 at a time which may be considered unsuspicious, as the parties were then living together as man and wife.
It must be borne in mind that this is not a case of a creditor seeking to set aside the act of dation en paiement to the wife in order to subject the property conveyed to execution. Here a husband is attempting to renounce a solemn act under questionable circumstances and he must fail in his demands.
Defendant’s claim in reconvention for damages in the sum of $5,000 for false arrest can avail her nothing, as the demand is not connected with and incidental to the principal demand. C.P. art 375. Thomas’ petition alleges that he is a resident of New Orleans and his uncontra-dicted testimony is that this city is his home. Under the terms of the above article of the Code of Practice, a reconven-tional demand not connected with the main demand can only be asserted when the plaintiff resides out of the state, or in the state but in a different parish from the defendant. This situation is not found in the instant case.
It is ordered, adjudged and decreed that the judgment, insofar as it recognizes Monroe Thomas to be the owner of and entitled to possession of the property involved and orders the annulment of the instrument dated March 31, 1942 and the registration thereof cancelled from C.O. B. 522 folio 280, be avoided, reversed and set aside, and the judgment is now amended so as to provide that there be judgment in favor of the defendant, Lillie Thomas, and against plaintiff, Monroe Thomas, dismissing the suit, and as thus amended and in all other respects it is affirmed. Costs of both courts are to be borne by plaintiff-appellee.
Reversed in part, amended in part.