64 So.2d 254 (1953)
LOUIS
v.
GARRISON et al.
No. 19982.
Court of Appeal of Louisiana, Orleans.
April 8, 1953.
Rehearing Denied April 20, 1953.
Writ of Certiorari Denied June 1, 1953.
*255 Benjamin Washastrom, New Orleans, for plaintiff and appellant.
Rudolph F. Becker, Jr., New Orleans, for defendants and appellees.
McBRIDE, Judge.
This appeal was taken by plaintiff from the judgment dismissing his suit under the so-called Sharecroppers' Act, LSA-R.S. 13:4911-13:4917, for possession of a two-room dwelling, which the defendants are occupying. Defendants admit their possession. They allege that they sold the lot on which the two rooms are located to plaintiff, but that as part of the consideration for the sale, and pursuant to an agreement between themselves and plaintiff, he granted to them the right of habitation in and to the said dwelling for the remainder of their natural lives, and to that end plaintiff executed a written instrument reading as follows:
 "January 17, 1949
To Mr. & Mrs. Gadley Virgin (or Survivor)
You are hereby granted right to occupy the residence in rear of church 3506 Benefit during your natural lives.
 Joe Lewis"
It is not disputed that "the residence in rear of church 3506 Benefit" is the two-room unit of which plaintiff seeks possession and which bears the Municipal No. 3135 Congress Street.
To an understanding of the nature of the transactions and the relationship existing between the parties, we narrate the following facts evinced by the record. The litigants are colored people. Louis, the plaintiff, is a preacher, and the defendants, an aged couple, joined his church some years ago. Defendants were in a bad state of health and in a poor financial condition and "on relief." Louis befriended them on two or three occasions by advancing to them insubstantial sums of money. Defendants owned Lot 8 of Square 1997 and permitted Louis to erect a tent thereon wherein he could conduct religious services. Some time thereafter, under some sort of leasing arrangement, defendants rented Lot 8 to plaintiff for a stipulated period of ten years at $1.75 per month. The evidence indicates that at the time the lease was made defendants were living in the two rooms on the rear portion of the lot. At any rate, it afterward developed that defendants were unable to keep up the payment of taxes as they matured, and this circumstance led to a verbal understanding that Louis would buy the lot from defendants. The lease had been in force but a short time, perhaps a year or so.
Louis acquired title from defendants on January 18, 1949 by authentic act before Joseph Rosenberg, Notary Public, and paid defendants the sum of $200 in cash, which was expressed in the act as the consideration for the sale. Louis afterwards satisfied a balance of $222 due on a pre-existing mortgage, and also paid out about $75 for delinquent taxes.
When confronted with the document relied upon by defendants, Louis freely admitted his signature thereto, but his claim is that when he signed it he did not know its contents because of his inability to read and write, he only being able to mechanically scratch out his signature. Notwithstanding that the document bears the date January 17, 1949, Louis insists he signed it "around 1947" and that he thought he was granting the defendants the right to live on the premises only "until I need the place." Louis' testimony along that line is entitled to no credence as defendants' evidence convinces us that Louis, well knowing its contents, signed the disputed document and the authentic *256 act of sale at one and the same time, although there exists a one day disparity in the dates shown by the two instruments.
Gat Virgin testified that Louis signed both documents together in the notary's office, and that the "paper" was handed to him after the sale was completed. Mr. Rosenberg, who had represented Louis for eight or ten years, appearing as a witness for defendants, stated that the document tendered by the defendants is written upon one of his letterheads and in his ownhandwriting, and that he prepared it in accordance with the understanding reached by the parties, and that it was fully explained to Louis, who comprehended the nature and import of the instrument. He states further that Louis signed it and the act of sale simultaneously. Mr. Rosenberg's testimony dispels the mystery surrounding the dates of the two acts. He explained the circumstances thusly:
"* * * the reason my act is dated 18th instead of 17th I think the following day when I went down to have the act registered it was not dated, and I put the 18th instead of 17th. I think the two documents were prepared and executed at one and the same time."
Plaintiff's objection to the admissibility of parol evidence tending to alter or change the dates expressed in the documents was properly overruled below. Where there is a clerical or inadvertent error the true date of an instrument may be shown by testimonial proof. Centanni v. Rhodes, No. 7600, Orleans Appeal (unreported); Dane & Northrop v. Selzer, La. App., 63 So.2d 760, and the authorities cited therein.
The crux of the case is whether the document offered by defendants to prove that plaintiff granted to them the right of habitation for life was susceptible to being introduced as competent evidence. The document was received in evidence below over plaintiff's objection to its admissibility on the ground that under LSA-C.C. art. 2236 an authentic act is full proof of the agreement contained in it as between the parties, and that extraneous evidence is inadmissible to change, enlarge, alter, or modify it. A further ground of objection is that by the terms of LSA-C.C. art. 2276, parol evidence is not to be admitted against or beyond what is contained in a written act.
Defendants' counsel contends that the rules of evidence invoked by plaintiff have no application to the instant case. The argument follows that the granting of the right of habitation to defendants was a part of the consideration to be given by plaintiff for the transfer of title to the property to him, and that such fact may be shown by parol evidence or otherwise.
The testimony establishes clearly that one of the moving considerations for the sale was the understanding that Louis would grant to the defendants the right of living on the property gratuitously and that the document which Mr. Rosenberg prepared at the time of the sale and at the instance of the parties was executed in furtherance of that end. Therefore, there was a real and genuine consideration for both contracts, and while the one recites a cash consideration of $200 and the other expresses none, parol evidence was competent to prove the true consideration. As above pointed out Louis expended in actual cash for the property about $497. The trial judge stated that he thought that the lot was worth about $1,200 or $1,500, and that he knew this fact as a result of his experiences in expropriation cases. Mr. Rosenberg valued Lot 8 at $1,500. A reasonable assumption is that the right of habitation was taken into consideration between the parties for the purpose of fixing the cash consideration for the sale.
The rule of evidence that parol evidence is admissible to show the true consideration not only exists in this State but exists throughout this country. In our jurisprudence it is well settled that the real cause and consideration of a written contract pertaining to immovable property may be shown by any sort of evidence even though the act does not recite a consideration, or expresses a different one. See Dart's New La.Dig. Vol. 7, page 215, § 241.
The written instrument above quoted, which recognized the right of defendants to live in 3135 Congress Street after the sale, and which specifically granted them the *257 right to remain there during their natural lives, is in the nature of a counter-letter, as was held by the trial judge.
The only mention of counter-letters in the LSA-Civil Code is to be found in Article 2239, which recites in part: "Counter letters can have no effect against creditors or bona fide purchasers; * * *." We have searched in vain for any codal or statutory definition of the term. In Karcher v. Karcher, 138 La. 288, 70 So. 228, 229, the Supreme Court, quoting Bouvier, defined a counter-letter as:
"`An agreement to reconvey where property has been passed by absolute deed with the intention that it shall serve as security only. A defeasance by a separate instrument.' Bouvier." (Italics ours.)
Both 1 Bouvier's Law Dict., Rawle's Third Revision, page 814 and Black define the word "defeasance" as "an instrument which defeats the force or operation of some other deed or of an estate."
In the act of sale the vendors set over, abandoned, and delivered, with all legal warranties and with substitution of warranty, their ownership of the whole of Lot 8 to the purchaser, Louis, who was present and accepted the transfer and acknowledged delivery and possession of the property.
When we consider the import of the instrument relied upon by defendants, and also consider the cause of its execution and the purpose which it was intended to fulfill, we think that the document operates as a partial defeasance, as it was calculated to and does defeat or offset the force or operation of the act of sale which, by its terms, constituted Louis the owner of the property and entitled him to have the full and complete use and possession thereof. The instrument can be classified as a counter-letter, as it defeats Louis' right to demand of defendants the possession of the two rooms occupied by them.
The document was properly admitted. The rule of evidence relied upon by plaintiff to support his objection as set forth in LSA-C.C. art. 2236, to the effect that the authentic act is full proof of the agreement contained in it as against the contracting parties, does not control in this situation.
It is the unbroken rule of law in this State that parties to authentic acts, even in the absence of fraud or error, may assail the verity of the recitals of a deed either by a counter-letter or by the answers of the other party to interrogatories on facts and articles. Incidentally, only in these two ways may the recitals of the authentic act be assailed. Lawrence v. Claiborne, 215 La. 785, 41 So.2d 680, and cases there cited.
The counter-letter held by the defendants grants them a right of habitation, which is the right of dwelling gratuitously in the house on the rear of Lot 8 for the remainder of their natural lives. LSA-C.C. arts. 627, 635, 639. The right of habitation may be established by all sorts of written titles. LSA-C.C. arts. 540, 628; Guier v. Guier, 7 La.Ann. 103.
For the reasons assigned, the judgment is affirmed.
Affirmed.