FRED W. JONES, Jr., Judge.
In No. 14,775, filed on August 21, 1978, Jackie Ray King and his wife sued Peoples Bank' & Trust Company and Julius Gill to have two mortgages, one for $35,000 and the other for $85,000, cancelled and for a declaratory judgment fixing the indebtedness of plaintiffs to Gill on a building contract.
In No. 14,894, filed on August 22, 1978, Peoples Bank & Trust Company sued Gill to foreclose by executory process on the two described mortgages. The Kings intervened seeking to enjoin further proceedings until questions raised concerning ownership of the mortgaged property and validity of the mortgages could be settled.
The two cases were consolidated for trial purposes. After the trial judge sustained the bank’s exceptions of no cause of action and no right of action, the Louisiana Supreme Court granted writs and in King v. Peoples Bank & Trust Company, 371 So.2d 257 (La.1979) held:
(1) The Kings had deeded their lot to their building contractor, Gill, to secure interim financing for construction of their house; the Kings could not attack the deed as a simulation; the Kings had expressly consented to Gill’s execution of the $35,000 mortgage to secure the bank’s loan; foreclosure on the $35,000 mortgage could proceed in accordance with law.
(2) Through its attorney, the bank knew that when the Kings deeded their lot to Gill the latter executed a counter-letter acknowledging that his vendors remained the true owners of the property; the bank knew that Gill did not have authority to execute the second mortgage, for $85,000, on the property; the $85,000 mortgage was a nullity and the bank was enjoined from foreclosure on it.
The case was remanded to the trial court to permit public sale of the property, determination of the indebtedness of the Kings to Gill, and adjudication of the rights of all parties, including the bank, to proceeds of the sale.
In No. 14,776, filed on June 25, 1979, Gill sued the Kings for the alleged balance owed on the building contract and for attorney fees.
On June 23, 1980, the Kings secured the release of the property in question from foreclosure under the $35,000 mortgage by paying the Caddo Parish sheriff a total of $49,362.85 — including interest, costs and attorney fees.
Nos. 14,775 and 14,776 were tried by jury and No. 14,894 was tried by the judge alone. Judgment was rendered in the consolidated matters as follows:
(1) Rejecting the Kings’ claims against the bank and Gill for damages and attorney fees.
(2) In favor of Gill against the Kings for $60,062.77 due on the building contract, subject to a subrogation in favor of the Kings for the $49,362.85 they had paid the Caddo Parish sheriff to release the foreclosure; for $850 per month rent for occupancy of the newly constructed house by the Kings from August 9, 1978 until repurchase of the property by the Kings; rejecting Gill’s demands against the Kings for attorney fees.
*645 (3) Ordering cancellation of the $35,000 and $85,000 mortgages.
(4) Ordering Gill to convey the property back to the Kings when they paid him the sums due under this judgment.
(5) In favor of the bank and against Gill for amounts due on the two mortgage notes, subject to a credit for the sum of $49,362.85 received from the Kings through the sheriff.
(6) Assessing court costs against the bank, Gill and the Kings in the proportion of Va to each.
The Kings appealed this judgment, asserting as substantial errors that:
(1) Under the counterletter Gill was obligated to deed the property back to the Kings upon demand. Therefore, the trial judge incorrectly construed it to require payment by the Kings to Gill of sums due under their building contract before Gill was required to execute the act of conveyance. Further, the trial judge erred in awarding Gill a judgment against the Kings for rental of their own property.
(2) The trial judge should have awarded them damages and attorney fees from the bank because of wrongful foreclosure under the invalid $85,000 mortgage.
(3) The trial judge erred in failing to find that the papers executed by the Kings, Gill and the bank amounted to the creation of a security interest in the Kings’ property, requiring compliance with the Truth-in-Lending Act.
The bank answered the appeal, contending that (1) the trial judge should have dismissed Kings’ claims against the bank, since the import of the Louisiana Supreme Court decision was to affirm the trial court judgment sustaining the exceptions of no cause of action and no right of action; and (2) the trial judge erred in assessing the bank for any portion of the court costs.
Gill also answered the appeal, arguing that (1) the trial court should have only allowed the Kings credit for $35,000 of the amount paid the sheriff rather than “subro-gation” for $49,362.85; and (2) Gill was entitled to legal interest at the rate of 12% after September 11, 1981 on the sums due him by the Kings.
Since the context facts of this litigation were given in detail in the cited Louisiana Supreme Court opinion, they will not be repeated here.

Legal Effect of the Counterletter

As pointed out in Louis v. Garrison, 64 So.2d 254 (Orl.Ct. of App. 1953), the only mention of counterletters in our Civil Code is found in Article 2239 [1] Our jurisprudence has elaborated upon this by holding that various secret acts which modify or suppress apparent contracts fall within the definition of “counterletter”. Delcambre v. Dubois, 263 So.2d 96 (La.App. 3rd Cir. 1972). For example, the following uses of counter-letters have been countenanced: (1) a security device agreeing to reeonvey property after payment of a loan or the occurring of some other condition; (2) a means of recognizing that the apparent contract is a pure simulation and of no effect between the parties whatever; (3) a recognition that the true owner is someone other than the person named in the apparent contract; or (4) a device for changing the nature of the apparent contract, as by acknowledging that a sale is actually a donation. See Karcher v. Karcher, 138 La. 288, 70 So. 228 (1915); LaFleur v. Guillory, 181 So.2d 323 (La.App. 3rd Cir. 1965); Schwarz v. Friedenburg, 135 So.2d 371 (La.App. 4th Cir. 1961); Haggard v. Rushing, 76 So.2d 52 (La.App. 2d Cir. 1954); Louis v. Garrison, supra.
The counterletter addressed to the Kings, dated December 8, 1977, provides:
“This is to acknowledge that you have this date deeded to me property described as (description omitted). The purpose of this conveyance was to allow me to obtain the necessary interim financing to construct you a residence on the above described property.
*646 “This is to further acknowledge that you are the true owners of said property, and I will reconvey same to you at the time of the closing of the permanent financing loan, or any other time you request. (Emphasis added).
Julius D. Gill”
This counterletter was expressly confect-ed to protect the Kings, by explaining that the property was placed in Gill’s name solely to enable him to secure interim financing for the construction of the Kings’ residence. This procedure was suggested by the bank (supplier of interim financing) because it preferred to deal directly with the building contractor. The question posed for our consideration on appeal is whether, under the counterletter, Gill was obligated to convey the property back to the Kings upon their request without the Kings first having to pay Gill any amount due under the building contract.
The language of the pertinent clause in the counterletter indicates it was contemplated that the property would probably be reconveyed to the Kings when construction of their house was completed by Gill and the Kings were ready to close their long-term loan for permanent financing. At that time, of course, in accordance with the usual practice, the lender would withhold sufficient funds from the loan proceeds to liquidate the interim financing indebtedness, cancel the $35,000 mortgage, take care of any liens that might have been filed, and pay Gill the balance due on the contract price. But, the counterletter then goes on to give the Kings the option of having Gill reconvey the property to them at “any other time you request.”
The language of this last clause is clear and unambiguous, and stipulates no conditions to be met by the Kings prior to exercise of the right to reconveyance of the property. It was obviously designed to protect their “true ownership” of the property in the event of exigent circumstances that might jeopardize their investment, such as financial difficulties on the part of Gill or his failure to properly fulfill his contractual obligations — as the Kings contended had occurred here. The counterletter in no way indicates that the deed to Gill was intended to serve as security for payment of the balance due on the building contract.
We conclude, therefore, that Gill was obligated under the counterletter to reconvey the property to the Kings upon their request when they occupied the dwelling in August 1978, without their having to first pay him the balance of the contract price. Of course, the property would have been reconveyed subject to the $35,000 mortgage which secured interim financing and the holder of that mortgage note would have continued to be protected by this encumbrance upon the property.
For this reason, we find that the trial court erred in rendering judgment in favor of Gill and against the Kings for the rental value of the property to which they should have received record title, and by conditioning reconveyance of the property to the Kings upon their paying Gill the amount due under the judgment. Consequently, the district court judgment will be amended accordingly.

Claim for Damages and Attorney Fees for Wrongful Seizure

As we have previously noted, the Louisiana Supreme Court in King v. Peoples Bank & Trust Company, supra, ruled that the $85,000 mortgage under which the bank sought to foreclose by executory process was null and void because Gill did not have authority to encumber the property with another mortgage (in addition to the $35,-000 one) and enjoined foreclosure under that mortgage. The Kings now seek damages and attorney fees for that wrongful seizure.
A party aggrieved by wrongful seizure is entitled to recover not only the special damages sustained but also general damages for humiliation, embarrassment, inconvenience and mental anguish. Commercial Credit Corp. v. Nolan, 385 So.2d 1246 (La.App. 3rd Cir. 1980); Dawson v. Piazzi, 371 So.2d 283 (La.App. 1st Cir. 1979); Eseat v. National Bank of Commerce, 284 So.2d 832 (La.App. 4th Cir. 1973).
*647 The record does not show that the Kings sustained any special damages as a result of the bank’s seizure under the invalid $85,000 mortgage. As to general damages, we note that the bank’s suit was directed against Gill and not the Kings. There was no reason, then, for the Kings to be embarrassed or humiliated by virtue of this constructive seizure. Second, the bank also foreclosed under the $35,000 mortgage, which the Louisiana Supreme Court in King, supra,.ruled to be valid. We do not glean from the record that the seizure under the invalid mortgage caused the Kings any more mental distress than the valid seizure. Therefore, we agree with the trial court’s rejection of the Kings’ claim for general damages for wrongful seizure under the $85,000 mortgage.
Reversing a line of cases allowing attorney’s fees incurred in enjoining wrongful seizure under executory process, the Louisiana Supreme Court in General Motors Acceptance Corp. v. Meyers, 385 So.2d 245 (La.1980) held:
“Generally, a successful litigant cannot recover attorney’s fees except where authorized by statute or contract (citation omitted). At the present time, there is no statutory authority for the recovery of attorney’s fees incurred to enjoin a wrongful seizure under executory proe-ess... The question is one which properly addresses itself to legislative action and not judicial fiat.”
Obviously, this ruling is dispositive of the Kings’ claim for an award of attorney fees for enjoining the wrongful seizure under the $85,000 mortgage.

Applicability of Truth-in-Lending Act

The Kings argue that the $35,000 mortgage should have been voided by the trial court because the bank did not comply with the Federal Truth-in-Lending Act, 15 U.S.C. 1601 et seq., and Regulation Z.
Pretermitting the question of whether this .issue is now res judicata because of trial court rulings as affirmed by the Louisiana Supreme Court in King, supra, we conclude that the cited statute is inapplicable because Gill, not the Kings, was the bank’s customer in this transaction.[2]
Furthermore, even if the Kings were the bank’s customers, they could not claim rescission of the $35,000 first lien under the Truth-in-Lending act.[3]

Effect of Payment by Kings of Amount Due Under $85,000 Mortgage.

Gill contends that the Kings were paying off their own debt when they remitted the $49,362.85 to the sheriff and that, *648 rather than being subrogated for that amount against Gill, they should simply have received credit for $35,000 on the contract balance owed Gill.
As we have explained, the property in question was transferred to Gill in order that he could secure interim financing under the $35,000 mortgage. The total indebtedness (not limited to $35,000) incurred in connection therewith was Gill’s, for which he was to be reimbursed by the Kings as part of the contract price of their house. The Kings were subrogated to the bank’s claim against Gill when they paid off the balance owed on the $35,000 mortgage, together with costs and attorney fees. However, the net effect of this subrogation was to give the Kings an offset against the amount they owed Gill on the building contract. Consequently, the judgment in favor of Gill against the Kings should be for $60,062.77, less a credit of $49,362.85 paid by the Kings on June 23, 1980.

Assessment of Court Costs

The bank complains that the trial judge erred in assessing it with one-third of the court costs, since no relief was granted on behalf of the Kings against the bank. Our review of the record does not convince us that the trial judge abused his broad discretion in his assessment of court costs. La.C.C.P. Art. 1920. Incidental to this, we do not agree with the bank’s argument that it was eliminated as a party to this litigation by the Supreme Court’s holding in King, supra. As pointed out, the case was remanded for adjudication of the rights of all parties, including the bank, to the proceeds of the anticipated public sale of the mortgaged property.

Conclusion

For the reasons set forth, we amend the trial court judgment in the following respects:
Paragraph 3 is amended to provide “that there be judgment in favor of Julius D. Gill and against Jackie Ray King and Cecile Ford King, in solido, in the amount of $60,-062.77 with interest at the rate of 7% per annum from July 1, 1978 until September 12, 1980, and 10% per annum thereafter, subject to a credit in favor of the Kings for $49,362.85 paid on June 23, 1980.”
Paragraphs 4 and 5 are deleted.
Paragraph 6 is amended to provide “that there be judgment in favor of Jackie Ray King and Cecile Ford King, and against Julius D. Gill, rejecting Julius D. Gill’s demands for attorney fees and rentals for their occupancy of the dwelling involved in these matters.”
Paragraph 7 is amended to provide “that there be judgment herein in favor of Jackie Ray King and Cecile Ford King and against Julius D. Gill ordering Julius D. Gill to execute a deed, with the customary warranty provisions and clauses, conveying to the Kings, in accordance with his obligation under the counterletter and for such other consideration as he may have received, the following described property:
Lot 88, North Park Estates, Unit No. 5, as per plat thereof recorded in Book 1400, at pages 451 — 453 of the records of Caddo Parish, La., with all buildings and improvements thereon.
As amended, the judgment of the trial court in these consolidated cases is affirmed. Costs of appeal are assessed one-half to the Kings and one-half to Gill.
AMENDED AND AFFIRMED.

. This article provides in pertinent part: “Counter letters can have no effect against creditors or bona fide purchasers; they are valid as to all others.. . . ”

. Regulation Z, 12 C.F.R. 226.9(a) reads in part:
(A) General rule. Except as otherwise provided in this section, in the case of any credit transaction in which a security interest is or will be retained or acquired in any real property which is used or is expected to be used as the principal residence of the customer, the customer shall have the right to rescind that transaction until midnight of the third business day, following the date of consummation of that transaction or the date of delivery of the disclosures required under this section and all other material disclosures required under this part, whichever is later, by notifying the creditor by mail, telegram, or other writing of his intention to do so....
“Customer” is defined in 12 C.F.R. 226.2(u) as:
(1) a cardholder or (2) a natural person to whom consumer credit is offered or to whom it is or will be extended, and includes a co-maker, endorser, guarantor, or surety for such natural person who is or may be obligated to repay the extension of consumer credit.,

. 12 C.F.R. 226.9(g) reads as follows:
(g) Exception to the general rule. This section (rescission) does not apply to:
(1) The creation, retention, or assumption of a first lien or equivalent security interest to finance the acquisition of a dwelling in which the customer resides or expects to reside.
(2) A security interest which is a first lien retained or acquired by a creditor in connection with the financing of the initial construction of the residence of the customer, or in connection with a loan committed prior to completion of the construction of that residence to satisfy that construction loan and provide permanent financing of that residence, whether or not the customer previously owned the land on which that residence is to be constructed. (Emphasis ours)