682 So.2d 988 (1996)
SUCCESSION OF Winona Quirk VENTRE,
No. 96-559.
Court of Appeal of Louisiana, Third Circuit.
November 6, 1996.
Leslie J. Schiff, Opelousas, for Emile K. Ventre.
*989 David L. Carriere, Opelousas, for Kathleen Quirk Lipari (Administratrix).
Ferdinand John Iseringhausen, Sunset, for Darryl Eugene Quirk et al. (Absentee Heirs).
Before WOODARD, DECUIR and PETERS, JJ.
DECUIR, Judge.
This appeal arises from a petition for declaratory judgment filed by Dr. Emile K. Ventre, Jr. attempting to nullify a marriage contract. The trial court found the marriage contract to be valid. We affirm for different reasons.

FACTS
Winona Quirk Ventre died of injuries sustained in an automobile accident on November 3, 1991. She was married twice. The first marriage was dissolved by divorce, and Winona married the plaintiff, Emile Ventre, on December 12, 1975. She had no children by either marriage.
Emile and Winona entered into a marriage contract stipulating that they chose to remain separate in property. The crucial issue in this case is the actual date on which the marriage contract was executed. The instrument bears a typed date of December 10, 1975, two days before the marriage. The instrument was filed in the public records on January 13, 1976. The disposition of several hundred thousand dollars worth of property turns on the resolution of this issue.
If the contract is found to be valid, Winona and Emile would be separate in property at the time of her death. Her separate estate would be inherited by her brothers, sisters, nieces, and nephews. If the contract is found invalid, then Emile and Winona established a community property regime at the time of their marriage. Winona's community property would be inherited by Emile and her collateral heirs would receive whatever separate property exists outside the marriage contract.
Emile Ventre filed a petition for declaratory judgment, which was answered by Winona's collateral heirs. A trial was conducted on the issue of whether or not Winona and Emile were married on the date the marriage contract was executed. The trial court found the marriage contract to be valid. Emile moved for a new trial, and the motion was denied. Emile filed a second motion for new trial based on newly discovered evidence. The trial court denied the second motion, noting that he was without authority to entertain a second motion for new trial. Emile lodged this appeal alleging the trial court erred in finding the marriage contract valid and in the alternative requesting that the matter be remanded for new trial based on the newly discovered evidence.

LAW
The law in effect when the marriage contract in this case was confected (prior to 1980) provided that a matrimonial agreement had to be in authentic form and must have been entered into prior to the celebration of the marriage. La.Civ.Code arts. 2328 and 2329 (1870). Interspousal contracts were prohibited by law except as specified in La. Civ.Code art. 2446 (1870), which provided for sales and transfers in specific instances that are inapplicable to this case. La.Civ.Code art. 1790 (1870); O'Krepki v. O'Krepki, 529 So.2d 1317 (La.App. 5 Cir.), writ denied, 532 So.2d 767 (La.1988). The authentic act constituted full proof of the agreement it contained. La.Civ.Code art. 2236 (1870).
Additionally, La.Civ.Code art. 2276 (1870), provided:
Neither shall parol evidence be admitted against or beyond what is contained in the acts, nor on what may have been said before, or at the time of making them, or since.
The trial court believed that the only exception to this rule was for testimonial proof that the date on the instrument was the product of a clerical or inadvertent error. See Clauss v. Burgess, 12 La.Ann. 142 (1857); Louis v. Garrison, 64 So.2d 254 (La.App. Orl.1953).
Based on the foregoing authority, the trial court found that the parol evidence did not suggest an improper date due to clerical or inadvertent error and was therefore, inadmissible. Left with only the authentic act *990 itself, he declared the marriage contract valid.
This reasoning was not sound, and the district court erred in not considering the parol evidence. This is because the parties to the authentic act were alleged to be husband and wife and thus fall under an exception to the parol evidence rule.
In Smith v. Smith, 239 La. 688, 119 So.2d 827, 829 (1960), the supreme court stated:
Since contracts between spouses are specifically forbidden by Articles 1790 and 2446 of the Civil Code, save for the three purposes detailed in Article 2446, it follows that any husband and wife who attempt to contract in violation of those restrictions do so in fraudem legis. If parol evidence is admissible to show fraud practiced on one of the contracting parties, it would, a fortiori, appear that it should be received when the fraud has been perpetrated on the law itself. And so this Court has held that parol evidence may be introduced to show that any obligation has been contracted in fraudem legis regardless of what form may have been given to the reprobated contract. Lazare v. Jacques, 15 La.Ann. 599; Kelly v. Kelly, [131 La. 1024, 60 So. 671 (1912)]; Ducote v. Stark, La.App., 87 So.2d 770.
If Article 2236 were to be applied and parol evidence excluded in cases involving the absence of consideration in contracts between a husband and wife, the spouses could easily evade the restrictions of Article 2446 and make prohibited contracts with each other simply by using the authentic act to disguise the true circumstances. But such manipulations are not sanctioned in view of Articles 11 and 12 of the Civil Code:
"Art. 11. Individuals can not by their conventions, derogate from the force of laws made for the preservation of public order or good morals." ...
"Art. 12. Whatever is done in contravention of a prohibitory law, is void, although the nullity be not formally directed."
* * * * * *
Furthermore, as we have above shown, parol evidence is admissible in all cases of contracts between spouses when they have attempted to violate a prohibitory law, notwithstanding that they have clothed their forbidden transactions in authentic form or other writings. It is true that the Court of Appeal for the Parish of Orleans ruled otherwise in Thomas v. Thomas, [63 So.2d 468 (La.App.Orl.1953)], but that decision, being contrary to our jurisprudence on this subject, cannot be followed.
Accordingly, the district court erred in failing to consider parol evidence for the purpose of determining the validity of the marriage contract. Having so found, we must now examine the parol evidence admitted by the district court for its full import.

PAROL EVIDENCE
In support of his contention that the marriage contract is invalid, Emile Ventre testified on his own behalf. The gist of Emile's testimony was that he and Winona prevailed upon their attorney, Kenneth Deshotel, to execute and file a backdated marriage contract so that it would appear that the contract was entered into on December 10, 1975, at which time the parties were unmarried, rather than on January 13, 1976, after the marriage. Interestingly, Emile's memory is crystal clear on the date and circumstances of the signing of the marriage contract, while strangely unclear on the circumstances surrounding the fourteen other authentic acts introduced by defendants wherein, Emile declares himself to be subject to a marriage contract. Furthermore, Emile testified at his deposition that Winona purchased the land for the family home on December 10, 1975, but the sale was not recorded until January 13, 1976. At trial, Emile testified that both the purchase and the marriage contract were executed on the same date, January 13, 1976.
Kenneth Deshotel, the notary, on the marriage contract also testified at trial. Deshotel testified that the contract was executed on January 13, 1976, and that he backdated it at the insistence of Emile and Winona. He testified further, that he warned both parties repeatedly that the document was invalid *991 because they were married and that he would testify to that effect if ever called. Deshotel exhibited the same excellent recall regarding the marriage contract and the exact same confusion with regard to the purchase of the land as Emile had in his testimony. Furthermore, Deshotel's recollection was vague as to who prepared the marriage contract (he or his assistant), whether the witnesses were told the instrument was backdated, whether he had executed other documents for Emile which purported that Emile was subject to a marriage contract, or whether he has ever before or since backdated another document.
Both witnesses to the marriage contract were also called. Neither witness could confirm or deny the date. One witness believed he had left the office before January 13, 1976, but indicated that it was a transition period and he might have been passing through the office on that date. Neither witness had any recollection concerning the actual signing or the contents of the document.
Before discussing our conclusions regarding the evidence presented, we note that we have some reservations regarding the propriety of Emile Ventre seeking relief from this court. As noted in defendants' brief, the Louisiana Supreme Court has stated that:
The courts recognize the rule that every suitor who seeks relief at their hands must himself be free from any unlawful or inequitable conduct with respect to the matter or transaction in question. This rule is known in equity as the rule of "clean hands."

Rhodes v. Miller, 189 La. 288, 179 So. 430 (1938); See also United Financial Serv. of Baton Rouge, Inc. v. Guste, 555 So.2d 561, 565 (La.App. 1 Cir.1989).
Likewise, our brethren on the fourth circuit, have held that where "[t]he litigants do not come to the court with clean hands, we shall leave them where their conduct has placed them." Hines v. Bick, 566 So.2d 455, 461 (La.App. 4 Cir.) (quoting Meyer v. Stock, 6 Orl.App. 175, 176-77 (La.App.1909)), writ denied, 571 So.2d 648 (La.1993). Furthermore, in Norvell v. Norvell, 629 So.2d 1312 (La.App. 4 Cir.1993) (quoting Fox v. Fox, 1993 WL 328789 (Tenn.App.1993)), the court noted that:
One other principle guiding the courts in the doing of equity is that "no one can take advantage of his own wrong." "In vain should he seek the aid of Equity who has violated equity." [Gibson's Suits in Chancery] at § 27.
In this instance, if Dr. Ventre and Mr. Deshotel are to be believed then Dr. Ventre clearly does not have "clean hands."
Admittedly, the classic civilian conception of equity would require that such consideration be reserved only for instances when positive law is silent. However, Professor Vernon V. Palmer of Tulane University has noted that Louisiana judges have as a practical matter appropriated to themselves an "inherent equity function" that is characterized by great discretion as to methods, sources, and opportunity for intervention. Vernon V. Palmer, The Many Guises of Equity in a Mixed Jurisdiction: A Functional View of Equity in Louisiana, 69 Tul.L.Rev. 1, 11 (1994). Under their inherent equity function, "the judge exercises a general discretion to recognize new rules of fairness that qualify or condition, but usually do not negate, the existing rule. The process operates upon the unselfconcious assumption that the discretion exits unless it is expressly denied by another law." Id. at 23.
The present case raises an interesting question regarding a direct conflict between the nullity of a marriage contract entered into contrary to prohibitive law and the equitable rules that would deny Dr. Ventre relief. Fortunately, for the reasons that follow, we need not strike that delicate balance.
An authentic act constitutes full proof of the agreement it contains. La.Civ.Code art. 1835. "Because the authentic act is clothed with a presumption of genuineness, the party attacking the authenticity of the act bears the burden of proving the invalidity." Di-Vincenti v. McIntyre, 611 So.2d 140, 141 (La.App. 1 Cir.1992), writ denied, 614 So.2d 1264 (La.1993). The jurisprudence in Louisiana has established that the burden is more than proof by a preponderance of the evidence. Id. Strong or convincing proof is *992 required. Id. We find that Emile Ventre has failed to carry his burden. The testimony of Emile himself is clearly self-serving. Furthermore, his contradictory testimony regarding the execution of the purchase of property for the family home undermines his testimony regarding when the marriage contract was executed. His credibility is further eroded by the evidence of sworn statements in other acts that he was in fact subject to a marriage contract. Accordingly, we are not persuaded by his testimony and find it insufficient to overcome the presumption of genuineness afforded authentic acts.
The testimony of Kenneth Deshotel while more troubling is ultimately no more convincing. Deshotel exhibited the same contradictions in his testimony as did Dr. Ventre. In addition, his credibility is shattered by his claim that he willfully aided Dr. Ventre in what could be described as a fraud upon Ventre's creditors. Are we to believe Deshotel has such contempt for his notarial oath and the ethical practice of law? If we are, how may we be assured that Deshotel's contempt would not extend to aiding his long-term client in defeating a marriage contract that is now burdensome. These credibility issues, leave us equally unconvinced that Mr. Deshotel's testimony is sufficient to overcome the presumption of genuineness afforded authentic acts.
Accordingly, we find that Dr. Emile Ventre has failed to present strong and convincing proof of such a magnitude as to overcome the presumption of verity of notarial acts. The trial court correctly found that the marriage contract was valid.

NEWLY DISCOVERED EVIDENCE
By this assignment Dr. Ventre requests that this court remand this matter to the trial court for consideration of newly discovered evidence. Dr. Ventre relies on this court's statutory authority under La.Code Civ.P. art. 2164, "to render any judgment which is just, legal, and proper upon the record on appeal."
We note that the remedy sought is an equitable one, and as we have discussed previously, Dr. Ventre's entitlement to such consideration is questionable. However, we have chosen to examine the evidence submitted and have reached the following conclusions.
First, we find that Dr. Ventre has failed to show that he used every effort and all due diligence in his power to timely procure the necessary evidence, and therefore, his application for new trial must fail. Barker v. Rust Engineering Co., 428 So.2d 391 (La.1983). The papers in question as newly discovered evidence were found in a piece of furniture located in a main room of the home. Dr. Ventre had nearly three years from the filing of his petition until trial to locate all relevant documents. We believe due diligence requires more than simply looking where documents are usually stored.
Secondly, we have examined the notes purported by Dr. Ventre's daughter inlaw to be written by Winona Ventre and find that the reference to the marriage contract is ambiguous in part due to lack of proper punctuation. Also, the reference "done after marriage" could be a reference to the filing of the marriage contract rather than its execution. In light of this ambiguity, this evidence would not be sufficient to overcome the presumption of verity of notarial acts.
Accordingly, this assignment lacks merit.

CONCLUSION
For the reasons assigned, the judgment of the trial court is affirmed. All costs of this appeal are taxed to appellant, Dr. Emile K. Ventre.
AFFIRMED.