276 So.2d 884 (1973)
Mrs. Gladist SAFFORD
v.
Emma Jane Safford ELLISH, wife of/and Cecil Charles Ellish.
No. 9294.
Court of Appeal of Louisiana, First Circuit.
April 9, 1973.
*885 Harry V. Singreen and John F. Caraway, Bryan & Caraway, New Orleans, for appellant.
Guy L. Deano, Jr., Covington, for appellees.
Before SARTAIN, BLANCHE and WATSON, JJ.
WATSON, Judge ad hoc.
In dispute in this matter is the disposition of the sum of Nineteen Thousand Nine Hundred Forty-Two and 64/100 ($19,942.64) Dollars, deposited in the registry of the 22nd Judicial District Court, the proceeds of the sale of 2.2 acres of land in St. Tammany Parish. The disposition of the money hinges on a determination of the ownership of the property prior to the sale and deposit of the money in the registry of the court pursuant to an order signed October 27, 1970.
Plaintiff, Mrs. Gladest (Gladist) Safford, is the mother of one defendant and the former mother-in-law of the other. Defendants, Mrs. Jane Safford Ellish Cashio and Cecil Charles Ellish, were husband and wife at the time this suit was instituted and when the purported to acquire the property in question, described as follows:
"That certain piece or parcel of ground, together with all the buildings and improvements thereon, and all of the rights, *886 ways, privileges, servitudes, appurtenances and advantages thereunto belonging or in anywise appertaining, situated in the Parish of St. Tammany, State of Louisiana, and more fully described as follows, to-wit:
"Two and two tenths (2.2) acres of land situated in Section Thirty-eight (38) of Township Nine (9) South, Range Fourteen (14) East, St. Tammany Parish, Louisiana, from the Intersection of the west line of Bayou Liberty Estates Subdivision and the south edge of Bayou Liberty Shell Road go south forty-five (45) degrees East 502.2 feet along said subdivision line to the place of beginning; and from said place of beginning go south forty five (45) degrees East three hundred sixty one and one tenth (361.1) feet, thence go south forty five (45) degrees West two hundred sixty one (261.0) feet to the corner of J. Lawrence, thence go North thirty eight (38) degrees, fifteen (15) minutes West along J. Lawrence's property (and beyond same) four hundred forty one and one tenth (441.1) feet, thence go North sixty-six (66) degrees forty five (45) minutes East along the property of Vic Galates two hundred twenty six and 0/100 (226) feet to the Point of Beginning." (Transcript, page 86.)
A deed of this property from Lunay J. Mayeaux to Jane Safford Ellish, wife of/and Cecil Charles Ellish for a consideration of $1300 was executed on November 11, 1953, before Allain C. Andry, Jr., Notary Public, and recorded in St. Tammany Parish. On March 16, 1955, the two purchasers and plaintiff, Mrs. Gladest (Gladist) Safford, jointly executed a counter letter before the same notary stating that "the truth is that the title to said property was so placed in our names for convenience only, the said property having been bought for the account of our mother and mother-in-law respectively, who paid the entire original purchase price:" This counter letter stated that Mr. and Mrs. Ellish would convey the property to Mrs. Safford whenever required to do so and authorized Mrs. Safford to have it recorded. Mrs. Safford recorded the counter letter in St. Tammany Parish on September 19, 1968.
On September 23, 1957, Mr. and Mrs. Ellish executed a cash deed of the property to one Joe E. Anzalone for a consideration of $2500. On the same date, Joe E. Anzalone conveyed the property back to Cecil C. Ellish for a consideration of $19,600, retaining a vendor's lien and privilege.
On June 9, 1971, Mrs. Safford filed suit against Mr. and Mrs. Ellish asking that she be recognized as the owner of the property in question. Defendants, Mr. and Mrs. Ellish, answered, contending (1) that the transaction with Mr. Anzalone subsequent to the execution of the counter letter did away with Mrs. Safford's claim and (2) that the three were co-owners in the proportion of one third each. Subsequently, the defendants filed an exception of prescription as to the counter letter, contending its recognition was barred by ten years' general prescription on personal actions under Civil Code Articles 3528-3530 and 3544.
Interrogatories were propounded to Mrs. Safford by defendants inquiring as to the source of the funds paid toward the property in question and other details of the transaction.
Defendants then filed a supplemental and amending answer, making an alternative plea that ten years' acquisitive prescription made them owners of the property. With this, they filed a reconventional demand for $55,000: $20,000 of which they alleged was contributed toward the purchase and upkeep of the property and $15,000 of which they alleged was due for their services as administrators of the property. A second reconventional demand asked $20,000 for breach of an oral contract to the effect that the counter letter was to be filed only in the event of Mr. Ellish's death.
*887 Defendants then filed a motion for summary judgment stating that there was no genuine issue of material fact because:
1. Defendants sold the property and are unable to convey title, and any claim of plaintiff is barred by 10 years' prescription;
2. In the alternative, the counter letter relates to a transaction prior to that from which defendants claim title;
3. In the alternative, that Anzalone's title was not encumbered by an unrecorded counter letter and defendants acquired their vendor's title, their purchase from Anzalone annuling and avoiding the previous counter letter; and
4. In the alternative, that defendants acquired title by acquisitive prescription.
A supplemental and amending petition in reconvention was then filed by defendants asking for an additional sum of $1,300, the purchase price of the property on November 11, 1953, which they alleged that they paid.
After a hearing on the merits, the trial court rendered judgment in favor of plaintiff, Mrs. Safford, and against the defendants finding Mrs. Safford to have been the owner of the property in question and entitled to the funds in the registry of the court. We affirm.
Defendants attempted a suspensive appeal. However, the bond was not filed timely. This is, therefore, a devolutive appeal.
Defendants-Appellants argue that:
"1. Plaintiff's claim is barred by ten years' liberative prescription.
"2. Defendants own the property, free of any cloud on their title, by ten years' acquisitive prescription.
"3. Performance of the counter-letter is impossible because the property described was sold before the plaintiff claimed it.
"4. The counter-letter is null because of error in the description.
"5. Defendants acquired the title of their vendor unencumbered by any unrecorded counter-letter.
"6. The allegations of plaintiff's petition are contradicted by the evidence.
"7. Plaintiff is liable to defendants for breach of contract governing the use of the counter-letter.
"8. Plaintiff is liable to defendants for certain sums advanced on behalf of plaintiff for purchase and maintenance of the property.
"9. Plaintiff is liable in quasi-contract for the reasonable value of defendants' services in administering the property for plaintiff." (Defendants-Appellants' Brief, page 2)
Defendants-Appellants' first argument, that plaintiff's claim is barred by ten years' liberative prescription, is unsound. As the court pointed out in LaFleur v. Guillory, 181 So.2d 323 (La.App. 3 Cir. 1965); writ refused, 248 La. 1099, 184 So.2d 24 (1966), quoting Planiol, Traite Elementaire De Droit Civil, An English Translation by the Louisiana State Law Institute, Vol. 2, Part 1:
"There is simulation when one makes an apparent contract, the effects of which are modified or suppressed by another agreement, contemporaneous with the first and intended to remain secret. That definition, therefore, presupposes that there is identity of parties and of the object between the ostensible and the secret act. The secret act is called `counter-letter.'" 181 So.2d 323 at 326.
We have here in the first sale to Mr. and Mrs. Ellish of the property in question a simulation, and an action to annul a simulated sale of property is not prescriptible. Schalaida v. Gonzales, 174 La. 907, 142 So. 123 (1932).
*888 The second argument, that defendants own the property by ten years' acquisitive prescription, is also unsound. The question is not res nova, as defendants' attorney argues. In Decuir v. Veazey, 8 La.Ann. 453 (1853), one Theophile Veazey executed a counter letter stating that he was not the true owner of certain property conveyed to him by his brother. He then pleaded acquisitive prescription of ten years to bar an action by his brother's creditors. The court found the counter letter to be manifest evidence of the lack of good faith necessary for ten years' acquisitive prescription. Lloyd v. Register, 184 So.2d 279 (La.App. 1 Cir. 1966), writ refused 249 La. 452, 187 So.2d 438, is a more recent case in which one who knew she had not originally acquired certain property by a just title was found to lack the good faith necessary for ten years' acquisitive prescription. Defendants in the instant case acknowledged by a counter letter that they were not in truth the owners of the property which they purported to buy. They therefore knew that they did not have a just title and did not have the good faith necessary for ten years' acquisitive prescription.
Defendants' third argument, that performance of the counter letter is impossible because of the subsequent sale to Joe Anzalone, is unsound. Despite the intervening sale and repurchase, this dispute is still between the original parties who signed the counter letter, Mrs. Safford, her daughter and former son-in-law. As between these parties, recordation of the counter letter was not essential to its efficacy. Jacobs v. Sikes, 253 So.2d 112 (La.App. 2 Cir. 1971). An identical question was presented in Cavallino v. Cavallino, 231 So.2d 623 (La.App. 4 Cir. 1970), where a conveyance of realty by purchaser to a mortgagee and resale to purchaser was held not to relieve purchaser of his obligations under a counter letter and not to result in purchaser acquiring and real party losing title.
Arguments four and five are merely restatements in different language of argument three and are covered by the law as previously set forth.
Argument six is concerned with the question of which party actually paid for the property in question when it was originally transferred to defendants, the argument being based on parol evidence. The counter letter itself states that Mrs. Gladest (Gladist) Safford "paid the entire original purchase price".
LSA-C.C. article 2276:
"Neither shall parol evidence be admitted against or beyond what is contained in the acts, nor on what may have been said before, or at the time of making them, or since."
This indicates that the recitation in the counter letter is conclusive. To the same effect is LSA-C.C. article 2239:
"Counter letters can have no effect against creditors or bona fide purchasers; they are valid as to all others; but forced heirs shall have the same right to annul absolutely and by parol evidence the simulated contracts of those from whom they inherit, and shall not be restricted to the legitimate (legitime). (As amended by Acts 1884, No. 5)"
Although there are cases in which parol evidence has been admitted in connection with a counter letter, they generally show other circumstances than those we have here; i. e.: the intent of the parties is doubtful, Haggard v. Rushing, 76 So.2d 52 (La.App. 2 Cir. 1954); lack of consideration for a counter letter under private signature, Charles Tolmas, Inc. v. Bressler, 230 La. 1087, 90 So.2d 55 (1956); clerical error in dating instrument, Louis v. Garrison et al., 64 So.2d 254 (La.App., Or. 1953), writ denied, June, 1953.
There is nothing in the instant case to remove it from the general rule that parol evidence is not admissable to *889 show the ownership of realty. Ceromi v. Harris, 187 La. 701, 175 So. 462 (1937). The defendants both signed the counter letter. It is an authentic act which makes full proof of its contents in the absence of a showing of fraud. Foshee v. Simkin, 174 So.2d 915 (La.App. 1 Cir. 1965). There being no evidence of fraud, the defendants are bound by the counter letter which they executed.
Argument seven is concerned with plaintiff's alleged breach of contract in recording the counter letter. The trial judge heard the testimony of the parties in regard to the circumstances surrounding the execution and recordation of the counter letter. It is apparent that he did not accept the existence of an oral contract between the parties governing use of the counter letter. We agree that the evidence does not establish the existence of such an oral contract or its alleged breach by plaintiff.
Argument eight maintains that plaintiff owes defendants certain sums paid toward the purchase and maintenance of the property. Plaintiff testified and also stated in her answers to interrogatories that she paid all of the original purchase price and the notes on the property. Defendants also testified that plaintiff paid the mortgage notes. There was a dispute among the parties as to which one paid for the fence and other improvements. However, in view of the fact that one or both of defendants resided on the property from September 3, 1957, until it was sold in October of 1970, it would seem that they were amply compensated for any money spent on the property. The trial judge was correct in awarding all of the proceeds of the sale to plaintiff.
Argument nine contends that defendants are entitled to compensation as administrators of the property. They were amply compensated for any such services by being provided with a home; the evidence does not establish their right to any further compensation.
We conclude that the judgment of the trial court giving effect to the counter letter, recognizing Mrs. Safford as the owner of the property in question and awarding her the proceeds of the sale thereof was correct.
All costs are taxed against defendants-appellants.
Affirmed.